## MARY H. ARMSTRONG ET AL. V. D. AND A. OPPENHEIMER.
### No. 7171.

1.   **Improvements—Good Faith—Possession**—A purchaser by warranty deed from a naked trespasser can not invoke the doctrine of possession in good faith when sued for the land, when slight inquiry would disclose the absence of title in his vendor.   A purchaser in good faith should have some reason for his belief in the validity of the title; the reason may not be good, but there must be some ground for believing that it is.

2.   **Immaterial Evidence.**—Heirs of the owner of the land sued for its recovery. Touching the question of good faith possession by the defendants it was immaterial and in no way aided the defense that in an illegal administration the land had been sold and the sale avoided, the defendant in no way connecting himself with the proceedings.

3.   **Rents as Damages in Trespass to Try Title.**—In an action of trespass to try title it appeared that the defendant in possession had entered upon the land within less than two years from the filing of the petition.   *Held,* that rents as damages can only be allowed from the time the defendant had taken possession.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN.

Suit was filed October 14, 1888. The defendants had bought the land sued for and had entered into possession October 14, 1887. Judgment was rendered against defendants for the land; the defendants were allowed value of improvements less value of rents for two years before the date of filing the suit. The plaintiffs appealed, resisting the allowance of value of improvements. The opinion gives other necessary facts.

*Lane & Mayfield*, for appellants, cited Rev. Stats., arts. 4813, 4815; Miller v. Brownson, 50 Texas, 583; House v. Stone, 64 Texas, 678.

*John D. Morrison*, for appellees, cited Rev. Stats., arts. 3813, 3814; Crane v. Blum, 56 Texas, 325; Johnson v. Templeton, 60 Texas, 238; Nevins v. McKee, 61 Texas, 412; Dixon v. Zadek, 59 Texas, 530.

TARLTON, JUDGE, *Section B*.—This was an action of trespass to try title to 738 acres of land lying in McMullen County, granted to Joseph A. Spicer. The suit was brought by Mary H. Armstrong, joined by her husband James Armstrong, in her own right and as next friend, for the use and in behalf of her two minor children, Fannie and Emma Coley, against D. Oppenheimer and A. Oppenheimer, and for the use and occupation of the land.

The appellees pleaded not guilty, and that they were possessors of the land in good faith; and that they and their vendor Moses McLane had had adverse possession of the premises in good faith for more than one year next before the commencement of this suit, and they and the said Moses McLane had made valuable improvements thereon; and they prayed for a decree accordingly against the plaintiffs for the value of such improvements.

The plaintiffs produced in evidence a connected and regular chain of title from the grantee in the patent down to Henry Coley, to which there were no objections by defendants.

They proved that Henry Coley died in 1874, leaving as his heirs at law Mary H. Armstrong, his surviving widow, and Emma and Fannie Coley, his children. It was agreed and admitted that the rental value of the land was 6 cents an acre per annum.

The appellees' only evidence of title was a deed from Moses McLane to them for the land in controversy, dated October 14, 1887, with covenants of general warranty. They did not propose to show that Moses McLane had any title whatever to the land.

The court gave judgment for appellants for the land, and for the value of the rent for two years prior to the institution of the suit, at 6 cents per acre per annum, and rendered a decree in favor of appellees for the value of the improvements, viz., two stock pens placed upon

the land by their vendor Moses McLane five years before the trial of the cause, in the sum of $800; from which judgment awarding the sum of $800 for the value of the improvements plaintiffs below (appellants in this court) excepted and gave notice of appeal.

The following are the court's conclusions of law and fact:

"1.   I find from the evidence, that plaintiffs have shown title to the land in controversy, and that the rental value of the same is 6 cents per acre per annum; and as a conclusion of law therefrom, that the plaintiffs are entitled to a recovery of the land, and for the use and occupation of the same for two years prior to the institution of this suit.

"2.   I find from the evidence, that the defendants are purchasers and possessors of the land in controversy in good faith, holding the same under a warranty deed; that their immediate vendor, Moses Mc-Lane, constructed two stock pens upon said land of the value of $800; and as a conclusion of law therefrom, that the defendants are entitled to recover from the plaintiffs the value of said improvements, less the rental value of said land at 6 cents an acre per annum for two years prior to the institution of this suit."

We deem it necessary to advert to only one of the assignments of error, which is as follows: "The court erred in finding that defendants were possessors in good faith of the land in controversy, and entitled to recover the value of the improvements placed thereon by their vendor Moses McLane, for the reason that the evidence disclosed that Moses McLane was a naked trespasser on said land; and the fact that Moses McLane conveyed said land to the defendants by deed, with covenants of warranty of title, would not of itself constitute the defendants purchasers and possessors of said land in good faith, and would not authorize a judgment against plaintiffs in favor of defendants for the value of the improvements placed upon the premises by Moses McLane."

We think that the testimony justifies the conclusion that Moses Mc-Lane, the vendor of the defendants, was a mere naked trespasser upon the land in controversy.   The evidence discloses no title or semblance of title in him; nor does it appear that he even thought that he had received or conveyed title.   D. Oppenheimer, one of the defendants, testified, that "he considered their title perfect, as they took a warranty deed from Moses McLane."   This fact appears to be the sole source of the good faith on which he and his codefendant relies.   He did not examine the record "to ascertain what Moses McLane's title was; did not know what title he had to the land; had heard that he had purchased it from a man by the name of Collins, but could not say that such was the fact."   He appears to have purchased the land without exerting the slightest diligence with reference to the important question of title.

"If a person does not look to the character of the title by which he enters upon and improves land, but recklessly acts upon the presump-

tion that any deed conveys a title, he does so at his own risk. If there are no grounds for his questioning the fact that he has neither a title nor the semblance of an apparent title, the law will conclusively presume that his claim is not based in good faith." House v. Stone, 64 Texas, 678; Miller v. Brownson, 50 Texas, 597; Robson v. Osborn, 13 Texas, 298; Hatchett v. Conner, 30 Texas, 104.

We do not think that a purchaser by warranty deed from a naked trespasser can invoke the doctrine of good faith, where the slightest inquiry would disclose the absence of a title in his vendor. Such a condition suggests willful blindness. A purchaser in good faith should have some "reason for the faith that is in him." The reason may not be a valid one, but there must be some ground for believing that it is.

We are referred by the appellee to his plea of res adjudicata. This is founded upon the following facts: It appears that in 1883 one J. L. Crooms applied for and received from the County Court of McMullen County temporary letters of administration on the estate of Charles Henry Coley, deceased, the ancestor of plaintiffs, and to whose estate the land in controversy belonged. In process of such administration the land was sold at administration sale and was purchased by one W. A. Hill, who took an administrator's deed, and himself conveyed to A. J. and J. J. Dull. These parties brought suit against F. M. Drake and others who were in possession, including, it appears, McLane, the vendor of defendants in this suit. The District Court, and on appeal the Supreme Court, held the administrator's deed a nullity, because the administration itself was void, and that the plaintiffs Dull could take nothing by their suit.

There was certainly no privity of any kind between the plaintiffs in this suit, the heirs of Coley, and the so-called administrator of his estate. They could in no way be bound by a proceeding illegally had by him.

The witness Oppenheimer testified, that he had heard of this suit before he purchased. He does not, however, state that he in any way relied upon the judgment therein rendered as an element in his title; nor does he plead it as a ground of good faith. The proceeding can in no way avail him or his codefendant. We are of opinion that the judgment of the lower court should be reformed and here rendered, that appellants recover the land in controversy, together with all improvements thereon, and that they recover from defendants rents to this date at the rate of 6 cents per annum per acre from the 14th day of October, 1887. They are not chargeable with rents prior to that date, as they had previously thereto not purchased nor occupied the land. We so recommend.

*Reversed and rendered.*

Adopted April 19, 1892.